(113 App. Div. 285)

### JONES v. ROBERTS et al.

(Supreme Court, Appellate Division, First Department. May 11, 1906.)

MASTER AND SERVANT—COMPENSATION—CONTRACT—CONSTRUCTION.

A so-called partnership contract, but construed to be a contract of employment, contained numerous articles pertaining to the conduct of a business and the compensation of the parties thereunder, and in the eleventh article provided that "anything hereinbefore contained to the contrary notwithstanding, it is expressly provided" that under no circumstances should either of defendants have any right to question the determination of or require an account from the plaintiff of any transaction, determination, or matter in anywise connected with the partnership, or have any other right as between them and plaintiff, except that of receiving such sum or sums as plaintiff should determine to award to them respectively as recompense for their services, which determination should in every instance be final and conclusive. *Held* that, irrespective of whether the other articles were to be construed as operative with respect to the ascertainment of profits only during the continuance of the partnership relation, the eleventh conferred on plaintiff, as master,

the right to determine at any time how much and what should be regarded
as profit of the business, and, as long as that was done in good faith, the
defendants were bound by the stipulation.

Appeal from Judgment on Report of Referee.

Action by Edward C. Jones against Louis H. Roberts and others.
From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, McLAUGH-
LIN, LAUGHLIN, and HOUGHTON, JJ.

Edward W. Hatch, for appellants.

Edmund L. Mooney, for respondent.

PATTERSON, J. The learned counsel for the appellant who ar-
gued this cause has, with his usual incisiveness, cut through the mass
of immaterial matter printed in the voluminous record now before us
and formulated in a few words the determinant question involved in
this controversy, namely, what construction should be given to the
eleventh article of the agreement between the parties to this action and
out of which their contest arises. He urges, however, that in answer-
ing that question the eleventh article should be construed in connection
with other provisions of the contract, and in the light of the surround-
ing circumstances in which it was executed.

The plaintiff was in fact the proprietor of a business which had been
conducted in a corporate name, and the three defendants had been em-
ployed in that business (which was that of dealing in bonds and securi-
ties) as clerks or assistants. The defendant Richards had been a
cashier and bookkeeper, the defendant Roberts a traveling bond sales-
man, the defendant Pearson the manager of an office the corporation
had in Philadelphia. It may be stated here, parenthetically, that Pear-
son is not interested in the event of this litigation; he not having an-
swered and apparently being in accord with the plaintiff in his view
of the matters in dispute. On the 28th day of January, 1899, the
corporation having been dissolved, the plaintiff and the three named
defendants entered into a written contract which in form and in fact,
and but for what will subsequently appear we should say in law, con-
stituted a copartnership agreement. That copartnership was formed
to take over and continue the business which had previously been con-
ducted by the corporation. In the instrument it is declared that the
parties agree to become and remain copartners, for the purpose of
buying and selling and handling bonds and other securities of corpora-
tions, under the firm name of Edward C. Jones & Co., from the 1st
day of February, 1899, during the term of 25 years thence next ensu-
ing, subject nevertheless to termination as thereinafter provided. Each
of the parties, other than Jones, agreed to devote his whole time and
attention to the copartnership business and diligently and faithfully
employ himself therein and carry on the same to the greatest advan-
tage of the partnership, being in all things subject to the control and
direction of Jones. The capital of the partnership was to be con-
tributed, altered, and withdrawn by Jones alone, in such form and
amounts and at such times as he should see fit to contribute, alter,
or withdraw the same, and the three defendants were to have no in-
terest whatever in the capital. All the leases, office fixtures, furniture,

books, records, and documents were to be the property of Jones, and the making of all contracts and business arrangements, including the employment and discharge of employés, was to be under his exclusive control. Jones was to be unrestricted in the matter of withdrawals on account of either capital or profits. The other parties were to be at liberty to withdraw out of the business monthly in anticipation of their expected profits; Richards at the rate of $4,000 per annum, and Pearson and Roberts each at the rate of $5,000. Then follow provisions of the contract which must be set out in extenso, namely:

"Seventh. At the end of every year, that is to say, on the 1st day of February, 1900, and annually thereafter, balance sheets shall be made up and the net profits of the business for that year ascertained. In reaching the amount of such net profits, there shall be charged: First, all expenses of the conduct of the business, including rent; second, a sum to be allowed to the said Edward C. Jones equal to 6 per cent. on $300,000, or upon any greater sum contributed or deemed or estimates by him to have been contributed as capital (the form thereof, whether cash, securities or personal services being immaterial), and in addition thereto the sum of $25,000 as compensation for his personal services.

"Eighth. In case the said balance sheet, as so made up, after the deduction of the items specified in the preceding clause, and any other items which said Edward C. Jones shall direct to be deducted on any ground which he may deem sufficient, shall show a profit, the same shall be divided and distributed as follows: 7½ per cent. thereof to said Richards; 15 per cent. thereof to said Pearson; 15 per cent. thereof to said Roberts; and the remainder to said Jones—provided, however, that in the case of said Richards, Pearson and Roberts, if their respective shares of such net profits shall exceed the sum of $6,000, the excess shall not be subject to withdrawal by them, but shall remain at the risk of the business, pledged as security for the due performance by them of their obligations under this agreement, upon sums they shall be allowed interest at the rate of 6 per cent. per annum, and such reservation and pledge shall continue in each year in the case of each partner until the total amount of his credit on that account shall be $25,000. Should the balance in any year show, or be decided by the said Edward C. Jones to show, either a loss or an unfavorable or unsatisfactory result, then and in that event there shall be charged to each of the other partners, to be paid or made good by him thereafter as said Edward C. Jones shall direct out of said reserve funds or otherwise, such proportion of his drawings during that year as shall be determined by said Edward C. Jones not to have been justified by the result of the firm's business.

"Ninth. In respect to the said several funds provided to be reserved out of the shares of profits of each said Richards, Pearson and Roberts in excess of $6,000, until each shall amount to $25,000, it is further stipulated and agreed that if either of the said three partners shall fail in due performance of any obligation contained in these articles, or if his connection with said firm shall be terminated by said Edward C. Jones in consequence of any act or omission on his part or any other act or thing deemed by said Edward C. Jones to render his further connection with said partnership detrimental to the interests of said Edward C. Jones, his right to any part of such fund shall cease and determine, and said Edward C. Jones is expressly authorized in that event to appropriate and expend the whole or any part thereof in such manner as he shall see fit by the employment of clerks and assistants to perform the duties theretofore incumbent on said partner or otherwise.

"Tenth. It is understood and agreed that in the case of bonds, notes and other securities which may be taken over by the said partnership as on account of capital contributed by the said Edward C. Jones, the difference between the price at which the same are so taken over and the price at which the same shall eventually be sold shall not constitute partnership profits, but shall belong to the said Edward C. Jones individually.

"Eleventh. Anything hereinbefore contained to the contrary notwithstanding, it is expressly provided not only that the said Richards, Pearson and Roberts shall have no interest whatever in the capital or plant or good will of said partnership, but that irrespective of any balance sheet or account or transaction the said Edward C. Jones may at any time or times, in view of business conditions existing or anticipated, determine an amount to be considered as profit or loss for any period, and may determine the precise amount to be debited or credited to either of his said partners in any case, and at any time, as effectually as if these articles had expressly provided for the particular debit or credit, and that under no circumstances shall either of the said partners, Richards, Pearson or Roberts, have any right to question such determination, or ask or require an account from the said Edward C. Jones in respect to any transaction, determination or matter in any wise connected with the said partnership, or have any other right as between him and the said Edward C. Jones, except that of receiving such sum or sums as Edward C. Jones shall determine to award to him as recompense for his services, which determination shall in every instance be absolutely final and conclusive. Also that the said Edward C. Jones may, at any time or times, alter the interests of any or all of said partners at will; also that on his direction the interest of any partner or partners shall cease at any time, whereupon the said partner or partners shall retire without affecting the obligation of any of the other partners to continue under these articles during the remainder of the term fixed therein for the continuance of such partnership; also that the said Edward C. Jones may at any time take into the said partnership any other person or persons on such terms and conditions as he shall see fit to make without affecting any obligation of said Richards, Pearson and Roberts expressed in these articles.

"Twelfth. In the event of the death of said Edward C. Jones, the person who may be named as executor of his will, or the person who may be appointed as administrator of his estate in case of intestacy, shall have the control and direction of the liquidation of the affairs of the said copartnership as fully and completely as if such person had been the sole surviving partner of said copartnership; the said other partners will lend their best efforts to the most advantageous liquidation of the affairs of the said copartnership controlled and directed in all things by the person so appointed to assume such direction. In case of the death of either of the partners other than the said Edward C. Jones, the effect of the same shall be only to entitle the personal representative of such deceased partner to receive such sum, if any, as the said Edward C. Jones shall determine to be due to him at the date of his death, which determination shall not be subject to question, and the business of the said firm shall continue as if such deceased partner had never been a member thereof."

Under this agreement the parties transacted business from the 1st day of February, 1899, until some time in February, 1902, when the relations existing between them were dissolved. On February 1, 1901, a computation of net profits of the preceding year was made by Richards, of which the sum of $28,602.81 was credited to Pearson, the same amount to Roberts, and $14,301.40 to the defendant Richards; and each of the parties accepted in full satisfaction of his interest for that year the amount thus credited. About the 1st of February, 1902, Roberts and Richards having announced their intended retirement from the arrangement, expert accountants found that the net profits realized in the business for the year ending February 1, 1902, was $306,862.25. The plaintiff thereupon adjusted the accounts of that year's business, after making what is alleged to have been a correction in the account, and the defendant Roberts was allowed and paid, as his 15 per cent., $41,932.30; and the defendant Richards was allowed and paid $14,770.60. In addition to these balances paid, the defend-

ants Richards and Roberts had drawn the amounts they were author-
ized to draw during each current year. The final payments made to
them, and the acceptance thereof, appear to have been under some
reservation of a right to claim that they were entitled to a larger
amount of profit than was represented by the amounts so paid them,
respectively. The assertion of that right occasioned the institution
of the present action. The plaintiff, under the apprehension that he
might be sued for an accounting by Richards and Roberts, brought
this action against them and Pearson (the last named, as said before,
is not an active party to the litigation), and in his complaint he sets
forth the making of the agreement; what he claimed to be his and
the defendants' relations to the business conducted under that agree-
ment; the dissolution of such relations; his right to determine what
amount should be paid to the defendants respectively on such
dissolution; his determination of such amounts; the payment thereof
to the defendants and their acceptance of the same; the claims of the
defendants that they were entitled as partners to share in profits on a
different basis from that adopted by him in making the distribution,
and that such payments were not final and conclusive, but that they
have, and each of them has, a right to question and examine into the ac-
counts and are entitled to the rights of general partners; that the de-
fendants threaten to take proceedings at law to enforce their demands
and to take steps for a dissolution of the relations and a sequestration
and liquidation of the property and assets of the plaintiff belonging
to him individually, and used and employed in the business conducted
under the name of Edward C. Jones & Co., and other facts entitling
him to equitable relief. He prayed that the agreement be judicially
construed by the court, and that it be determined that the defendants
and each of them had been fully paid all they were entitled to, and
they be enjoined and restrained from asserting in any manner any
claims against him based upon any relations existing between him and
them; that the payments made by the plaintiff to them and each of
them be declared to be final and conclusive; "or failing that, and a
judicial determination that a settlement and determination of the said
business are necessary or proper, that an accounting between the parties
be had forthwith, and that upon said accounting the defendants, other
than the defendant Pearson, be adjudged to repay and restore to the
plaintiff any sums found to be due to him upon said accounting accord-
ing to such principles as may be found applicable upon the judicial con-
struction of the said agreement, and that said plaintiff have such further
or other judgment or relief in the premises as may be proper."

The attitude taken by the plaintiff in his complaint, and insisted
upon during the trial until its completion, and now, is that the agree-
ment in question was not one constituting a general partnership, but
was one of employment by him of the defendants as servants, clerks,
or assistants in his own personal business. The defendants in their
answers insisted that they were partners, with the rights of partners,
and were entitled to an account of profits; that they were not precluded
by the receipt of the amounts paid them from demanding such an ac-
count; that there was no final settlement and adjustment of their respec-

tive interests; that they were entitled to a larger amount of profits than had been paid them; and they demanded affirmative relief that a full and complete accounting be had between the plaintiff and the defendants in respect of all transactions and of all assets and effects of the business conducted under the name of Edward C. Jones & Co. from the beginning thereof, down to and including the 31st of January, 1901. Counterclaims were also set up, but it is unnecessary to consider them.

Upon an examination of the case, the first inquiry naturally is as to the nature and character of the agreement we have under consideration. The defendants, however, have disposed of that inquiry by the construction of the agreement made by the referee at their request and upon their requirement. They abandoned the contention that the contract constituted a partnership, and they requested the referee to find as matter of law (and he did so find):

"That the articles constituted a master and servant contract, with the plaintiff as master and the defendants as servants, for a compensation to the servants not consisting at all in some kind of salary payable certainly in any event, but consisting solely and exclusively in a percentage upon the net profits of the business of the master, which net profits are to be ascertained by the master in certain defined manners, and according to certain defined methods of successive procedure laid down in the articles."

The effect of this conclusion of law is that the defendants are entitled to compensation for services as servants out of profits to be ascertained by the plaintiff, the employer, in a certain way. They now insist that, in the final adjustment of the amounts to which they were entitled on the termination of the relations existing between them and the plaintiff, he was bound to include as an item of profit certain so-called "bonus or profit stocks," which came into the possession of the plaintiff as the result of various financial transactions, but the cash value of which had not been realized to the disruption of their relations. It is, to say the least, doubtful whether such bonus or profit stocks are to be regarded as capital or profit. It seems that they were received as a bonus upon purchases of bonds, bought with capital belonging to the plaintiff, and in which he alone was interested. Such as were sold during the continuance of the relations between the parties were certainly treated as profit, or, in other words, the money realized upon them was so treated, but from year to year, when accounts were settled and compensation was paid, the so-called profit stocks held over unsold did not enter into the account, and it would seem therefore as if, by the acquiescence of all parties, profit was only predicable of such stocks as were actually sold or disposed of. But those annual statements and settlements would not prevent the assertion of the defendants' present claim, were it not barred by the provision of the eleventh clause of the agreement. We are not in accord with the view of the learned counsel for the appellant that the eleventh clause, read in connection with the seventh and eighth clauses of the agreement, limits or qualifies the power, which, under the former clause, the plaintiff had to determine at any time that which should constitute profit out of which compensation to be paid to the defendants should arise. The

seventh and eighth clauses undoubtedly refer only to conditions exist-
ing during the continuance of the business.   The eleventh clause has
a much wider application than to the balance sheets or accounts ren-
dered or to be rendered during the continuance of the relations between
the parties.   It is stipulated, among other things, that "anything here-
inbefore contained to the contrary notwithstanding, it is expressly pro-
vided" that under no circumstances shall either of the said partners Rich-
ards, Pearson or Roberts have any right to question the determination of
or require an account from the plaintiff of any transaction, determina-
tion, or matter in any wise connected with the said partnership, or have
any other right as between them and him, except that of receiving such
sum or sums as Edward C. Jones shall determine to award to them re-
spectively as recompense for their services, which determination shall
in every instance be final and conclusive; and also that Jones may at
any time alter the interest of all or any partners or partner at will, and
that on his direction the interest of any partner or partners shall cease
at any time, and that Jones might take into the partnership any other
person upon such terms as he should see fit.   The right to terminate
the relations is associated with the power to fix the compensation.

The effect of this eleventh clause is to leave to the plaintiff, Jones,
the authority to determine at any time the amount to be considered as
profit or loss, thus depriving the defendants of the right to question
the plaintiff's act in fixing the amount of their compensation based
upon profit, and limits them to receiving such sum or sums as the
plaintiff may determine to allow them; and, in every instance, that
determination to be absolutely final and conclusive.   Of course, this
power and right of the plaintiff was one to be honestly exercised, but
there is no imputation of fraud made by the defendants, nor is the
agreement attacked upon the ground that it is unfair, oppressive, in-
equitable, or unreasonable.   The referee found as conclusions of law,
at the request of the defendants, that there is no unconscionableness in
the agreement, nor lack of mutuality, nor is there oppressiveness; that
the articles contained ample consideration for sustaining and enforcing
them upon each party; that the agreement is a valid one; and that the
eleventh article must be construed not otherwise than harmoniously
with the seventh, eighth, and ninth, and other articles, and all parts
are in harmony with each other.   If the eleventh clause is to be con-
strued as operating with respect to the ascertainment of profits only
during the continuance of the partnership relation, then we would have
to consider the nature and character of these so-called profit stocks,
and whether the defendants were entitled to have the amounts paid
and received by them increased by a percentage to be allowed of their
value, if and when ascertained.   But we consider the eleventh clause
as being so broad, and intended to be so broad, as to confer upon the
plaintiff the right to determine at any time how much and what should
be regarded as profit of the business; and, as long as that was done
in good faith, the defendants are bound by their stipulation.   That
they received very large sums upon the final adjustment of their in-
terests is apparent.

If our view of the eleventh clause of the contract as above expressed

is correct, it is unnecessary to consider the other questions raised by the appellants.

The judgment appealed from should be affirmed, with costs.

O'BRIEN, P. J., and LAUGHLIN and HOUGHTON, JJ., concur. McLAUGHLIN, J., concurs in result.